**HAMPTON ROADS SHIPPING ASSOCIATION, on behalf of its members, jointly and severally, Appellees,**

**v.**

**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION (AFL–CIO), and its Affiliated Locals in the Ports of Hampton Roads,**

**Local 846, International Longshoremen's Association, AFL–CIO,**

**Local 970, International Longshoremen's Association, AFL–CIO,**

**Local 1248, International Longshoremen's Association, AFL–CIO, Appellants.**

**South Carolina Stevedores Assoc., Amicus Curiae.**

**No. 84–1834.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 1, 1984.

Decided Oct. 23, 1984.

Rehearing Denied Nov. 20, 1984.

Ernest L. Mathews, Jr., New York City (Charles R. Goldburg, Thomas W. Gleason, New York City, on brief), for appellants.

Braden Vandeventer, Norfolk, Va. (Daniel R. Weckstein, Ray W. King, Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief), for appellees.

Charles A. Edwards, Atlanta, Ga. (Greene, Buckley, DeRieux & Jones, Atlanta, Ga., Edward D. Buckley, Bailey & Buckley, Charleston, S.C., on brief), for amicus curiae.

Before WINTER, Chief Judge, SPROUSE, Circuit Judge, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

The International Longshoremen's Association and several affiliated locals (collectively the union) appeal from the entry of a preliminary injunction in an action brought by Hampton Roads Shipping Association. The injunction restrains the union from striking and requires the parties to arbitrate a dispute pursuant to the provisions of their local contract. Because the dispute is presently the subject of both arbitration under their master contract and litigation in the Southern District of New York, we affirm the restraint against a strike and vacate the order to engage in arbitration under the local contract.

I

The Shipping Association is a multiemployer, collective bargaining association that represents employers in Hampton Roads, Virginia, in negotiations with the union. The union supplies longshoremen and other waterfront employees to the Hampton Roads ports. The relationship between the union and the association is regulated by master and local contracts. The parties disagree over whether the master contract or the local contract governs a dispute about extra drivers for container gangs.

The parties to the master contract are the International and a group of regional shipping associations representing employers in 34 ports on the east coast and in the Gulf of Mexico. One of the regional associations is the Council of North Atlantic Shipping Associations, of which the Shipping Association is a member.

The master contract includes a containerization agreement, which, among other things, specifies: "The minimum size of the container gang used in loading or unloading containers to or from container ships shall consist of 18 men plus two drivers." It also provides that alleged violations of the containerization agreement are first considered locally. If the dispute is not resolved, it is referred to the emergency hearing panel, which consists of an equal number of representatives from the union and the regional shipping associations. A decision of a majority of the panel is an enforceable arbitration award. If the panel deadlocks, a third party is selected to break the deadlock, and his decision becomes the arbitration award. The contract permits the International to withhold its services from any employer who refuses to abide by an arbitration award, and in this event, a local no-strike clause shall be inapplicable.

The local contract between the Shipping Association and the union also provides for a minimum gang of 18 men plus 2 drivers. In addition, it stipulates that utilization of the members of the gang is at the discretion of the employer. The local contract

provides for the arbitration of grievances by an arbitrator selected from a panel named by the Federal Mediation and Conciliation Service. It contains a no-strike clause.

## II

On June 12, 1984, the emergency hearing panel considered a grievance concerning the use of container gangs in the Port of Galveston, Texas, and issued an award containing two provisions. It first determined that under the master contract a container gang consisted of 18 men plus 2 drivers and that should additional drivers be required, they must be drawn from outside the gang. The award also provided that it applied to all parties to the master contract.* The Shipping Association promptly stated that it considered the panel's interpretation to be invalid, that it would not abide by it, and that the award should be withdrawn.

The union filed suit against the West Gulf Maritime Association in the Southern District of New York to enforce the panel's award on June 28, 1984. The Council of North Atlantic Shipping Associations has intervened in the New York action to contest the award. On August 29, 1984, the court held that the record was insufficient for it to determine whether an award had been made. Consequently, it remanded the matter to the panel with directions that it supplement the record by answering a number of questions. The court added that if the questions were resolved in the union's favor, the court would then have occasion to consider the remaining objections to the enforcement of the award. These objections include, the court noted, the contention that "the grievance which led to the award was local in nature and not properly a Master Contract concern." At this stage

of the proceedings, the court refrained from deciding if it or an arbitrator should determine whether the grievance is local or regional.

On remand from the district court, the panel deadlocked. In accordance with its rules of procedure, the issue has been submitted to a third party arbitrator.

In the meantime, the union informed the Shipping Association that as of August 1, 1984, it would refuse to provide gangs to the ports of Hampton Roads unless additional drivers were hired from outside the gang as required by the emergency hearing panel's award. The Shipping Association brought a grievance and sought on-site resolution of the dispute pursuant to the local contract, which resulted in deadlock. On August 1, the Association applied for a preliminary injunction in the Eastern District of Virginia to prevent the strike pending arbitration under the local contract. It contended that the dispute is a local matter because the utilization of gangs is governed by the local contract. It proved that for many years employers in Hampton Roads have assigned extra drivers from the 20 member gang. The district court issued the injunction on August 9, 1984, and ordered the parties to arbitrate under the local contract.

## III

We cannot accept the union's argument that at the time the district court entered the preliminary injunction an award by the emergency hearing panel justified withholding the services of union members pursuant to the master contract. The clause on which the union relies is predicated on the existence of a valid award. From the inception of this litigation, however, the

---

* On June 14, 1984, the cochairmen of the panel, representing the employers and the union, sent the following letter to all parties to the master contract:

At a meeting of the Management-ILA Emergency Hearing Panel held June 12, 1984 the following determination was made:

That in accordance with the provisions of the Master Collective Bargaining Agreement,

negotiated by and agreed to by the parties, the minimum size of a container gang shall be 18 men plus two drivers and that should additional drivers be required such drivers are to be drawn from outside the gang and shall not be part of the regular 20 man gang.

It is required that this determination be lived up to its fullest intent by all parties.

validity of the award has been contested, and it has not yet been resolved. Indeed, even before the action in the Eastern District of Virginia was commenced, the validity of the award had been questioned in the enforcement proceedings instituted by the union in the Southern District of New York.

▮ The master contract contains a provision for submitting disputes about the container agreement to binding arbitration. Consequently, although the contract does not contain an express no-strike clause, an implied obligation arises not to strike over this dispute. Moreover, this implied no-strike obligation is a sufficient predicate for an injunction when it is coupled with other factors justifying relief. *Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 380–82, 94 S.Ct. 629, 638–39, 38 L.Ed.2d 583 (1974).

The district court's findings that the Shipping Association would be irreparably injured by a strike, and that the public interest would be served by maintaining operation of the ports of Hampton Roads, are amply supported by the evidence. The record also discloses that the Council, the Shipping Association's collective bargaining representative, has participated in the arbitration of this dispute and is a litigant in the New York enforcement proceedings. Thus, the Shipping Association is privy to both the arbitration and the litigation. As long as the Shipping Association seeks to resolve the dispute through the Council in arbitration and judicial proceedings, it is entitled to enforcement of the union's obligation not to strike. *Boys Market, Inc. v. Retail Clerks Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

▮ Because the parties are already engaged in arbitration and enforcement proceedings in which the validity of the award and the nature of the dispute—whether it be local or regional—can be considered, the district court's order for local arbitration is unnecessary. We perceive no reason why essentially the same issues should be arbitrated and litigated simultaneously on both regional and local levels.

Accordingly, the case is remanded to the district court for modification of its preliminary injunction to bring it in conformity with this opinion and for other proceedings that the district court may find appropriate. Our mandate shall issue forthwith. Each party shall bear its own costs.

SPROUSE, Circuit Judge, concurring:

I concur in what Judge Butzner has written except that I would interpret the master contract to require that arbitration on containerization issues be conducted under the procedures created pursuant to the master contract. Neither the master contract nor the Hampton Roads local contract specifically addresses the problem of possibly conflicting grievance procedures. Disputes concerning containerization, however, have long plagued the shipping industry. Because the industry and the unions responded to these disputes by creating in the master contract a specific and comprehensive grievance device, it appears to me that they intended this device to be a vehicle for resolution of all containerization disputes.

I feel, therefore, that the district court committed error when it enjoined the unions from violating the no-strike clause of the local union agreement because, in my opinion, the local agreement did not govern the underlying issue. As the parties are in the process of resolving their dispute under the grievance provisions of the master contract, and I agree that there was an implied no-strike clause in the master contract, I concur in the opinion.