**S.E.L. MADURO (FLORIDA), INC., Plaintiff-Appellee,**

v.

**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL 1416, and International Longshoremen's Association, Local 1416–A, Defendants-Appellants.**

**No. 84–5639.**

United States Court of Appeals, Eleventh Circuit.

July 16, 1985.

Thomas W. Gleason, Charles R. Goldburg, Law Offices of Thomas W. Gleason, New York City, for defendants-appellants.

Susan Potter Norton, Hogg, Allen, Ryce, Norton & Blue, P.A., Don Ryce, Coral Gables, Fla., for plaintiff-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and WRIGHT *, Senior Circuit Judge.

PER CURIAM:

This case is before us on an appeal of a preliminary injunction granted to plaintiff S.E.L. Maduro (Florida), Inc. (hereafter "Maduro"). The injunction prevents defendant International Longshoremen's Association, Local 1416 and Local 1416–A (hereafter "the Union") from engaging in a work stoppage and orders the parties to proceed to local arbitration of a dispute concerning the number of workers required to load and unload cargo containers.

This litigation stands in a different posture today than when it was decided by the court below. Therefore, a review of the complex history of this issue is warranted.

The International Longshoremen's Association (ILA) is an international labor organization. Appellants, Local 1416 and 1416–A, are affiliates of the International. The ILA engages in collective bargaining with a coalition of multi-employer bargaining associations including the Southeast Florida Employers' Port Association (SFEPA), of which appellee, Maduro, is a member. Collective bargaining is conducted on both a coastwide and a port-by-port basis. Coastwide bargaining culminates in a Master Contract which sets terms and conditions at all ILA ports. One of the items in the Master Contract involves containerization.

Paragraph five of the Containerization Agreement of the 1983–1986 ILA Master Contract provides:

The minimum size of the container gang used in loading or unloading containers to or from container ships shall consist of 18 men plus two drivers.

The controversy in the present case concerns whether, when more than two drivers are required, the extra drivers can come from the "18 men" or must be in addition to the regular twenty-person crew.

In 1981, the ILA negotiated an agreement in Tampa, Florida that provides for the resolution of disputes under the Master Contract's Containerization Agreement by a body known as the Emergency Hearing Panel (EHP). The agreement provides:

*The Emergency Hearing Panel:* In order to correct all violations and resolve all grievances it is agreed that an emergency hearing panel of an equal number of representatives from each side shall ... [hear and resolve] all cases relating to the Containerization Agreement on an emergency basis at the earliest possible moment. ...

There is one management representative from each employer association, including SFEPA, on the EHP. A further agreement, called the Hollywood Agreement, provides that alleged violations of the Containerization Agreement are to be heard at the local port under local procedures. If there is a failure to agree or one party wishes to appeal, the matter is referred to the EHP. In addition, alleged violations of the Master Contract involving more than one port are referred directly to the EHP. A majority vote of the panel is final and binding and constitutes an enforceable award. If the panel deadlocks, a neutral arbitrator is selected to break the deadlock. The Hollywood Agreement further provides that the union has the right to refuse to render service to any carrier or direct employer who has been found to have violated the provisions of the Master Agreement and who refuses to abide by the decisions of the EHP.

On May 22, 1984, a container grievance arose in the Port of Galveston, Texas over the meaning of "18 men plus two drivers."

* Honorable Eugene A. Wright, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

This grievance was processed through local procedures and then referred to the EHP which met in New York on June 12, 1984. At the meeting, a union representative made a motion "that the gang size shall be 18 plus two with drivers added to the twenty." The nine ILA members present voted in favor of the motion. Eight of the management representatives voted against the motion and one abstained.[1] The EHP's cochairperson, a management representative, ruled that the motion had been carried, and the minutes state:

RESOLVED: That in accordance with the provisions of the Master Collective Bargaining Agreement, negotiated by and agreed to by the parties, the minimum size of the container gang shall be eighteen men plus two drivers and that should additional drivers be required such drivers are to be drawn from outside the gang and shall not be part of the regular 20 man gang.

On June 14, 1984, notice was sent to all employers, employers' associations, and ILA locals advising that this resolution had been passed and stating that "[i]t is required that this determination be lived up to in its fullest intent by all parties." The notice was signed by the EHP management cochairperson and the union cochairperson.

The ILA brought an action in the United States District Court for the Southern District of New York against the employers' association involved in the Texas dispute for enforcement of the EHP award. The court remanded the case to the EHP to determine whether the union had indeed prevailed at the EHP, given the abstention by a management representative. *International Longshoremen's Association v. West Gulf Maritime Association*, 594 F.Supp. 670 (S.D.N.Y.1984). The EHP reconvened, but deadlocked on the question of the effect of the abstention. The issue then went to an outside arbitrator, who found that the union's position had prevailed at the original EHP meeting. The United States District Court for the Southern District of New York subsequently enforced the arbitrator's decision, *International Longshoremen's Association v. West Gulf Maritime Association*, 605 F.Supp. 723 (S.D.N.Y.1985),[2] and the Second Circuit affirmed. *International Longshoremen's Association v. West Gulf Maritime Association*, 765 F.2d 135 (2nd Cir.1985). In addition, the district court allowed the ILA to join the other regional employer associations, including SFEPA, in the proceeding when it reached the district court for the second time. *International Longshoremen's Association*, 605 F.Supp. 723 (S.D.N.Y.1985). The Second Circuit affirmed the addition of these defendants. *International Longshoremen's Association*, 765 F.2d 135 (2d Cir.1985).[3]

---

**1.** One of the management representatives who voted against the motion was an alternate, not a regular panel member, and "it was subsequently determined that alternates were not entitled to cast a vote." (minutes EHP hearing June 12, 1984).

**2.** The district court rejected the claim that the controversy concerned "a matter appropriately dealt with at the local level":

That ... was the very issue raised at the June 12th resolution and decided adversely to respondents. In passing the resolution, the EHP rejected the argument of management that the Master Contract did not govern the minimum size of container gangs using more than two drivers.

The EHP unquestionably has the authority to determine whether an issue is covered by the containerization provisions of the Master Contract. Such authority is a necessary part of its general authority, expressly granted by the parties, to resolve disputes relating to the containerization provisions.
*Id.* at 726.

**3.** The Second Circuit specifically approved the joinder of the other employer associations, finding that the district court had jurisdiction over the parties through New York's long arm statute and because

the award purported to be a decision based on the Master Contract. All of the respondents are parties to the Master Contract. Thus, the EHP decision, if valid, would be binding against all of the respondents. The district court did not err in confirming the award against them. The decision of the EHP is binding on all ports governed by the Master Contract.

In the meantime, on August 8, 1984, Maduro commenced the present proceeding, seeking to restrain threatened work stoppages by the Union. Prior to filing the court action, Maduro had filed a grievance, but the parties had reached a deadlock. Maduro then demanded arbitration, claiming that the dispute was covered by the local grievance and arbitration provision, not the Master Contract.

On August 13, the court below issued the preliminary injunction. Until then, the Union had not mentioned the EHP decision to the court. On August 15, however, the Union petitioned the district court to dissolve the preliminary injunction because of the pending New York litigation. The district court denied this petition on August 29, 1984. These actions took place before the decision of the EHP was enforced by the United States District Court for the Southern District of New York and the Second Circuit, and before SFEPA was joined as a party to that litigation.

The action by the Southern District of New York, affirmed by the Second Circuit, appears to have a preclusive effect on this litigation. *Cf. West Gulf Maritime Association v. ILA Deep Sea Local 24,* 751 F.2d 721, 731 (5th Cir.1985) (reversing preliminary injunction preventing work stoppage and compelling local arbitration while case was before United States District Court for the Southern District of New York; unwise to decide issue separately at each port as New York court is in a position to render a unitary decision).[4] We therefore VACATE the order granting the preliminary injunction and REMAND to the district court for further consideration of this litigation in light of these developments.

*Id.* at 3. The court further emphasized that the issue before the EHP concerned the proper interpretation of the Master Contract and not local collective bargaining agreements. *Id.* at 4.

**4.** Since filing this opinion, the Fourth Circuit has dissolved an injunction in a similar case,

holding that the employer association and the local union were bound by the EHP award. *South Carolina Stevedores Association v. Local 1422, International Longshoremen's Association,* 765 F.2d 422 (1985).