PACESETTER SYSTEMS, INC.,
Plaintiff-Appellant,

v.

MEDTRONIC, INC. and Med Rel Inc.,
Defendants-Appellees.

No. 81–5136.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 3, 1982.

Decided May 24, 1982.

Jonathan J. Wilcox, Mills & Wilcox, San Francisco, Cal., for plaintiff-appellant.

Alan G. Carlson, Merchant, Gould, Smith, Edell, Welter & Schmidt, Minneapolis, Minn., argued, for defendants-appellees; Raymond A. Bogucki, Fraser & Bogucki, Los Angeles, Cal., John D. Gould, Minneapolis, Minn., on brief.

Before WALLACE, HUG and ALARCON, Circuit Judges.

HUG, Circuit Judge:

The parties to this patent infringement dispute brought essentially identical actions in district courts in Florida and California to determine the validity of patents on the design of cardiac pacemakers. The California district court, concluding that the litigation filed first in the Florida court would fully resolve the dispute, declined to exercise jurisdiction over the second-filed action and dismissed it. The sole issue in this case is whether the district judge abused his discretion in declining to exercise jurisdiction. We conclude he did not and affirm the dismissal.

## I

The plaintiff in this action, Pacesetter Systems, Inc., ("Pacesetter") is a California corporation that designs and manufactures cardiac pacemakers and related instruments. Medtronic, Inc., a Minnesota corporation, also designs and manufactures pacemakers. It is the owner of the three patents at issue in this action. Med Rel, Inc., a Minnesota corporation that manufactures pacemakers, owns an undivided interest in two of the three challenged patents.

On Friday, November 7, 1980, Medtronic and Med Rel filed suit in the district court for the Southern District of Florida. That action alleged that Pacesetter had manufactured and sold implantable heart pacemakers that infringed patents owned by Medtronic and Med Rel. The complaint specifically alleged infringement of the United States Patent Nos. 3,391,697; 4,066,086; and Reissue No. 28,003. The plaintiffs sought injunctive relief and damages. On the day that complaint was filed, attorneys for Medtronic advised attorneys for Pacesetter that the action had been commenced.

On Monday, November 10, 1980, Pacesetter filed the instant action in the district court for the Central District of California. It sought a declaratory judgment holding United States Letters Patent Nos. 4,066,086; 3,391,697; and Reissue No. 28,003 invalid, not infringed, and unenforceable. The parties agree that the Florida infringement action and the California declaratory judgment action involve identical parties and issues.

Medtronic and Med Rel sought dismissal of the instant action. They urged the district court to decline to exercise its jurisdiction and to defer to the court in which the action was first filed. They also argued that dismissal was required because the district court lacked personal jurisdiction over Med Rel, an indispensable party. The district court granted Medtronic's motion in deference to the court in which action was first filed.

Pacesetter appealed, claiming that the district court's decision to dismiss the action was an abuse of discretion because the "balance of conveniences as between the actions" strongly favored the California action. It claimed the district court had mechanically applied the "first to file" rule, without giving consideration to the comparative convenience of the parties.

## II

There is a generally recognized doctrine of federal comity which permits a

district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district. *Church of Scientology of California v. United States Department of the Army*, 611 F.2d 738, 749 (9th Cir. 1979); *Great Northern Railway Co. v. National Railroad Adjustment Board*, 422 F.2d 1187, 1193 (7th Cir. 1970). Normally sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action. However, this "first to file" rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration. As we stated in *Church of Scientology*,

> [T]he "first to file" rule normally serves the purpose of promoting efficiency well and should not be disregarded lightly. Circumstances and modern judicial reality, however, may demand that we follow a different approach from time to time
>
> . . . .

611 F.2d at 750 (citation omitted).

■ The Supreme Court has emphasized that the solution of these problems involves determinations concerning "[w]ise judicial administration, giving regard to conservation of judicial resources and com-prehensive disposition of litigation," and that "an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts." *Kerotest Manufacturing Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183–84, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952). We will reverse the district court's decision applying the "first to file" rule in light of considerations of sound judicial administration only for an abuse of discretion.[1]

### III

The order of dismissal of the district court stated:

> This court is not of the belief that in every instance the first filed case should be the vehicle for the trial of the action, but in this case it appears provident to grant the defendants' motion for dismissal because it is in the interest of judicial economy and convenience of the parties and it is of some significance that the Florida action has been brought by the holder of the patent against alleged infringers.

■ Examination of the complaints filed in these two actions indicates that the issues raised are identical. The central questions in each are the validity and enforceability of three specific patents. The same three parties are involved in both suits.[2] The two actions differ only as to the reme-

---

1. Pacesetter contends the district court judgment is equivalent to denial of declaratory relief and should therefore be subject to closer scrutiny than that required by the abuse of discretion standard. This court has held that the district court's exercise of discretion as to declaratory remedies is subject to a "more searching review" and that this court may "substitute its judgment" for that of the district court. *Doe v. Gallinot*, 657 F.2d 1017, 1024–25 (9th Cir. 1981). The instant case, however, does not concern the denial of a declaratory remedy. Rather, it concerns the court's discretion to accept or decline jurisdiction. Although the particular remedy sought is declaratory relief, a decision as to whether the declaratory remedy is appropriate would become an issue only after the court had properly exercised jurisdiction under the comity doctrine. A more searching review is thus not appropriate to the determination here involved.

2. Medtronic and Med Rel moved for dismissal in the district court on the alternate basis that Med Rel was an indispensable party over which the court lacked personal jurisdiction. Med Rel's participation in the suit was claimed to be necessary because it owns an undivided interest in two of the three challenged patents. Med Rel was alleged to be a Minnesota corporation doing business in Puerto Rico, and without business activities or property in California. It was therefore claimed Med Rel had insufficient contacts with the state of California to support an assertion of personal jurisdiction. Because the district court reached no conclusion as to its personal jurisdiction over Med Rel, we do not consider this contention.

dy sought, and we therefore conclude the first to file rule is applicable.[3]

We agree with the district court that the goal of judicial efficiency would not have been served by accepting jurisdiction. Pacesetter correctly asserts that at the time Medtronic moved to dismiss the California action, neither action had proceeded past the pleading stage. However, permitting multiple litigation of these identical claims could serve no purpose of judicial administration, and the risk of conflicting determinations as to the patents' validity and enforceability was clear. No apparent bar existed to a presentation of Pacesetter's claims and defenses before the Florida court. That forum was capable of efficiently resolving all issues, and economic use of both courts' resources resulted from the California court's refusal to consider Pacesetter's claims.

Appellant refers to cases in which the patentee has been enjoined from proceeding with a first-filed action against a customer for infringement when a second action has been filed by the manufacturer against the patentee contesting the validity of the patent. See William Gluckin & Co. v. International Playtex Corp., 407 F.2d 177 (2d Cir. 1969); Formflex Foundations, Inc. v. Cupid Foundations, Inc., 383 F.Supp. 497 (S.D.N.Y.1974). The considerations of sound judicial administration are obviously different when the issues are identical but the parties are different and the parties to the second action are the major contestants. This circumstance is recognized in Kerotest, 342 U.S. at 185–86, 72 S.Ct. at 222. That situation is not present in this case because the same parties are involved in both actions.

■ Appellant further contends that the district court was required to give consider-

ation to the same factors as it would under motions to transfer brought pursuant to 28 U.S.C. § 1404(a). In appropriate cases it would be relevant for the court in the second-filed action to give consideration to the convenience of the parties and witnesses. This would be particularly true in the type of cases just mentioned where the patentee and the customer are involved in one action and the patentee and the manufacturer are involved in a second action. See Gluckin, 407 F.2d at 179–180. However, normally the forum non conveniens argument should be addressed to the court in the first-filed action. Apprehension that the first court would fail to appropriately consider the convenience of the parties and the witnesses should not be a matter for our consideration. As the Supreme Court stated in Kerotest:

Such apprehension implies a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure. It reflects an attitude against which we were warned by Mr. Justice Holmes, speaking for the whole Court, likewise in regard to a question of procedure: "Universal distrust creates universal incompetence." Graham v. United States, 231 U.S. 474, 480 [34 S.Ct. 148, 151, 58 L.Ed. 319]. If in a rare instance a district judge abuses the discretionary authority the want of which precludes an effective, independent judiciary, there is always the opportunity for corrective review by a Court of Appeals and ultimately by this Court.

342 U.S. at 185, 72 S.Ct. at 222. The court in the second-filed action is not required to duplicate this inquiry although the conve-

---

**3.** Pacesetter suggests that the first to file rule may have no application here because although the Florida action was filed before the California action, Pacesetter was not served with the Florida complaint until after the California action was filed. It therefore notes that the "Central District of California was [the] first court to gain jurisdiction over the parties." This contention is without merit. In view of the fact that Pacesetter had full knowledge of the Florida action before filing in California, basing this jurisdictional decision on the technicalities of service of process would be inappropriate. A federal action is commenced by the filing of the complaint, not by service of process. Fed.R.Civ.P. 3. It is thus the filing of actions in coordinate jurisdictions that invokes considerations of comity. See Product Engineering and Manufacturing, Inc. v. Barnes, 424 F.2d 42, 44 (10th Cir. 1970).

nience of the parties and witnesses may play a part in the decision.[4]

■ The district court properly recognized Medtronic's interest in choosing a forum. Declaratory relief is intended to serve a unique function in patent disputes, eliminating multiple litigation and protecting competitors from infringement actions that are threatened but not pursued. *Societe de Conditionnement en Aluminum v. Hunter Engineering Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981). In contrast to those policies, Pacesetter's declaratory judgment action multiplies litigation. It does not shield Pacesetter from an unfair threat of an infringement action, but attempts to remove ongoing litigation from the forum chosen by the plaintiff. "The manufacturer who is charged with infringing a patent cannot stretch the Federal Declaratory Judgments Act to give [it] a paramount right to choose the forum for trying out questions of infringement and validity. He is given an equal start in the race to the courthouse, not a headstart." *Kerotest*, 342 U.S. at 185, 72 S.Ct. at 222. *See also Sunstrand Corp. v. American Brake Shoe Co.*, 315 F.2d 273, 275 (7th Cir. 1963); *Topp-Cola Co. v. Coca-Cola.Co.*, 314 F.2d 124, 126 (2d Cir. 1963).

■ The district court considered all relevant factors. The decision to decline jurisdiction in view of the proceedings before the Florida district court was not an abuse of discretion. The judgment of the district court dismissing the action is AFFIRMED.

---

4. Contrary to Pacesetter's assertions, the order of the district judge indicates that he did give consideration to the relative convenience of the parties and their witnesses. He also acknowledged the significance of the fact that the first action was brought against the manufacturer, not a customer.

An affidavit by Pacesetter's counsel indicated that Pacesetter was a California corporation with an office and factory in Sylmar, California, and a sales office in Miami, Florida. It employed approximately 490 persons and had annual sales of eleven million dollars. All records concerning research, design and manufacture of its products were kept in California, and principal officers had their offices there. Testimony as to financial and technical aspects of production would be provided by Pacesetter management officials, and the affidavit concluded that these officials' extended absence from the company in order to testify in the Florida action would disrupt production. The affiant claimed that Medtronic, in contrast, was a very large corporation with no particular ties to Florida, and that the California forum would thus be equally convenient for Medtronic and Med Rel.

Affidavits submitted by Medtronic indicated the Florida forum had been chosen because some of the allegedly infringing sales of pacemakers had occurred there. The affiants stated that Pacesetter had two sales offices in Florida, and that Pacesetter units constituted a substantial percentage of the pacemakers sold in Florida. They indicated that the parties were also engaged in litigation in an action brought by Pacesetter in the district court for the Western District of Kentucky. Medtronic's affidavits undermined Pacesetter's claims that a non-California forum would jeopardize its continued operation. They also suggested that Pacesetter had significant and substantial contacts with Florida.