**FAT POSSUM RECORDS, LTD., Plaintiff,**

v.

**CAPRICORN RECORDS, INC., Defendant.**

No. 3:95CV145–B–A.

United States District Court, N.D. Mississippi, Western Division.

Nov. 3, 1995.

Stephan L. McDavid, Holcomb, Dunbar, Connell, Chaffin & Willard, Oxford, MS, for plaintiff.

Virginia Wilson, Wyatt, Tarrant & Combs, Memphis, TN, J. Graham Matherne, Wyatt, Tarrant & Combs, Nashville, TN, for defendant.

### *MEMORANDUM OPINION*

BIGGERS, District Judge.

This cause comes before the court upon the defendant's motion to dismiss, stay or transfer. The court entertained oral argument on the motion on October 27, 1995, at which time the plaintiff presented witnesses on its behalf. Upon duly considering the testimony of the plaintiff's witnesses, as well as the parties' memoranda and exhibits, the court is ready to rule.

### FACTS

The plaintiff, Fat Possum Records, Ltd. ("Fat Possum"), is a Mississippi corporation which produces original albums, also known as master recordings, for various blues art-

ists. Fat Possum entered into an agreement with the defendant, Capricorn Records, Inc. ("Capricorn"), wherein Fat Possum granted Capricorn an exclusive six-year license to produce and distribute compact discs and cassette tapes from Fat Possum master recordings. In exchange for the exclusive rights to Fat Possum recordings, Capricorn agreed to pay Fat Possum royalties on all compact discs and cassettes sold. Capricorn further agreed to advance Fat Possum $5,000.00 per month for the first eighteen months of the contract as well as $5,000.00 per new album, up to a maximum of $90,-000.00.

Fat Possum contends that Capricorn breached the agreement by failing to make monthly advances and royalty payments when due. Capricorn maintains that they are still under contract with Fat Possum, but that the original agreement has been modified. Fat Possum, believing the agreement to have been breached, has negotiated with House of Blues, a third party, on a new agreement. However, neither House of Blues nor any other company will enter into a contract with Fat Possum until their agreement with Capricorn is terminated. Capricorn refuses to agree that they have terminated the contract.

Capricorn filed suit against Fat Possum in the United States District Court for the Middle District of Tennessee on September 29, 1995, seeking to enforce the allegedly modified agreement. However, the Tennessee action was not immediately served upon Fat Possum. On October 3, 1995, Fat Possum filed this suit against Capricorn in the United States District Court for the Northern District of Mississippi, and immediately served the defendant with the summons and complaint. Fat Possum was not formally served with the Tennessee action until well after the Mississippi action was filed and served.

At the hearing, the plaintiff submitted the testimony of Jeffrey Kempler, a Georgia attorney who had been representing Fat Possum in negotiations with Capricorn, and Bruce Watson, an employee of Fat Possum. Kempler testified that he faxed a letter to Capricorn on Friday, September 29, 1995, in which he stated that Fat Possum considered

the agreement to have been breached by Capricorn, and that in order to mitigate its damages, Fat Possum would be negotiating a new agreement with a third party. Approximately 6:00 p.m. that evening, Capricorn faxed to Kempler a copy of the Tennessee complaint, with a note stating that the complaint had been filed that day and asking if Kempler would accept service on behalf of Fat Possum. Kempler had left the office by then and did not find the faxed complaint until Monday morning, October 2, 1995. Kempler testified that upon finding the complaint Monday morning, he immediately faxed a copy to Fat Possum's office in Oxford, Mississippi. He also testified that he spoke to Matthew Johnson, president of Fat Possum, regarding the complaint on either October 2nd or October 3rd, though he could not recall exactly when. Kempler did not remember whether or not he specifically told Johnson the complaint had been filed. However, when Kempler faxed the complaint to Johnson on October 2nd, he attached a cover letter which stated that the enclosed complaint "has or may be filed."

Watson testified that he was an employee of Fat Possum, and that his first day on the job was Monday, October 2, 1995. Watson stated that Johnson went to Jackson, Mississippi, for two or three days that week, but that Johnson was present in the Oxford office on Monday morning, arriving at approximately 10:00 a.m. He could not recall exactly how long Johnson was present, but conceded on cross-examination that it was roughly half a day. Watson further testified that someone meeting the description of Thomas Davis, Capricorn's process server, came by looking for Johnson while Johnson was out of town.

Although Capricorn did not offer any live testimony at the hearing, it did submit the affidavit of its process server, Thomas Davis. In his affidavit, Davis testified to several events indicating that Matthew Johnson, president of Fat Possum, was evading service. Davis testified that when he went to the Fat Possum office on October 2nd and asked for Johnson, he was told that Johnson was out of the country. Davis further testified that on October 4th, he was parked

across the street from Fat Possum's office when Johnson arrived. Davis stated that when Johnson saw him parked across the street, Johnson ran inside the office and refused to answer the door. Davis also testified that on the morning of October 7th, he knocked on the door to Johnson's residence. Even though he heard someone moving about inside, no one came to the door.

## LAW

The defendant argues that this case should be dismissed in its entirety, or stayed pending the outcome of the Tennessee action, in accordance with the first to file rule. In the alternative, the defendant requests that this case be transferred to the Middle District of Tennessee pursuant to 28 U.S.C. § 1404(a).[1]

The first to file rule states that "when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action." *Pacesetter Sys., Inc. v. Medtronic, Inc.,* 678 F.2d 93, 95 (9th Cir.1982); *see also United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.,* 920 F.2d 487, 488 (8th Cir.1990). Federal courts attempt to avoid duplicative litigation in an effort to prevent waste, to avoid rulings which may entrench upon the authority of sister courts, and to prevent piecemeal resolution of issues that call for a uniform result. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24,* 751 F.2d 721, 728–729 (5th Cir. 1985). The first to file rule should not be applied in a rigid and mechanical fashion; however in the absence of compelling circumstances which warrant keeping the action in the second filed forum, courts should exercise their discretion to defer to the court in which the action was initially filed. *United States Fire Ins. Co.,* 920 F.2d at 488–489; *Pacesetter Sys., Inc.,* 678 F.2d at 95.

During oral argument, Fat Possum proposed that these actions are not identical, arguing that the Mississippi action seeks to recover for an alleged breach of the original agreement while the Tennessee action seeks to enforce an alleged modification to the agreement. Despite Fat Possum's artful characterization of the issues, the court finds that these are duplicative suits, involving identical parties and subject matter. Both actions seek to determine the status of the contractual relationship between the parties. Neither court can resolve its action without hearing evidence of both the alleged breach and alleged modification. The issues do not have to be identical to be duplicative. A substantial overlap of the content of each suit is sufficient. *Mann Mfg., Inc. v. Hortex, Inc.,* 439 F.2d 403, 407–408 (5th Cir.1971); *see also Texas Instruments, Inc. v. Micron Semiconductor, Inc.,* 815 F.Supp. 994, 997 (E.D.Tex.1993) (to be duplicative, two actions need only involve closely related questions or common subject matter). To proceed with these two duplicative actions in different forums would certainly lead to a waste of judicial resources and would possibly lead to inconsistent resolution of common issues. In the interest of judicial economy and efficiency, one court should exercise its discretion to defer to the other.

Having determined that these are duplicative actions, we now turn to the question of which court should proceed. It is undisputed that the Tennessee action was filed four days prior to this action. Capricorn asserts that other than the inconvenience either party would endure from having to litigate outside of its local area, no convenience factors weigh heavily in favor of either forum. Although the license agreement states that Mississippi law applies to any disputes arising from the agreement, the defendant asserts that district courts sitting in diversity are often called upon to interpret another state's law.

The plaintiff contends that the first to file rule means not only first to file a complaint but also the first to effect service of process. Since the Mississippi action was the first to be filed and served, the plaintiff argues that application of the rule would give this court priority. In response to the plaintiff's argu-

---

1. 28 U.S.C. § 1404(a) states that a district court may transfer any civil action to any other district where it might have been brought.

ment that service of process is part of the first to file rule, the defendant asserts that Fat Possum purposefully evaded service, for which it should not be rewarded.

Since the Tennessee action was indisputably filed first, this court should relinquish its jurisdiction in favor of the district court in Tennessee. The plaintiff's argument that first to file really means first to serve is not well-taken. Relatively few cases address the factual situation of the first filed action being the last one served. Of those cases, nearly every court found that the order of service was not an issue. The courts almost unanimously held that the forum in which the action was first filed should take priority over the other, even though the second filed action was the first action served. *See Pacesetter Sys., Inc.,* 678 F.2d at 96 n. 3; *Barber–Greene Co. v. Blaw–Knox Co.,* 239 F.2d 774, 777–778 (6th Cir.1957); *Marianna Imports, Inc. v. Helene Curtis, Inc.,* 873 F.Supp. 308, 309 (D.Neb.1994) *Peregrine Corp. v. Peregrine Indus., Inc.,* 769 F.Supp. 169, 172 (E.D.Pa.1991). Often, the courts addressing the issue of service emphasized that even though the defendant in the first filed action had not been formally served, they all had notice of the first action prior to filing the second action. *See Pacesetter Sys., Inc.,* 678 F.2d at 96 n. 3; *Marianna Imports, Inc.,* 873 F.Supp. at 309.

The only case which the plaintiff cites or which the court can find in which the second filed but first served suit was given priority over the other is *Pittman v. Triton Energy Corp.,* 842 F.Supp. 918 (S.D.Miss.1994). Triton Energy Corporation filed suit against Pittman in the United States District Court for the Northern District of Texas and properly served Pittman by delivering a copy of the summons and complaint to the Texas Secretary of State. However, the Secretary of State failed to successfully forward the action to Pittman. The Secretary of State attempted to send the summons and complaint to Pittman by certified mail, but the package was returned marked "forwarding time expired." Five days after the Texas

complaint was filed, Pittman filed suit against Triton Energy Corporation in the United States District Court for the Southern District of Mississippi, and effected service upon the defendant. The court held that Pittman, through no fault of his own, never had notice of the Texas complaint (even though it had been properly served upon the Secretary of State), and therefore the court refused to stay or dismiss the Mississippi action. *Pittman,* 842 F.Supp. at 923. The court noted that the summons and complaint mailed to Pittman were returned because the forwarding address had expired, and indicated that its ruling might be different if Pittman had refused to sign for the certified letter or had otherwise actively evaded service. *Id. Pittman* is readily distinguishable from the present action in that Johnson, unlike Pittman, had notice of the first filed action, and there is some evidence that Johnson actively evaded service.[2]

In this action, the court finds that Fat Possum had notice of the Tennessee suit prior to filing the Mississippi complaint. Kempler, Fat Possum's Georgia attorney, faxed a copy of the Tennessee complaint to Matthew Johnson on the morning of October 2nd, the day before Fat Possum filed its suit in Mississippi. Accompanying the complaint was a letter from Kempler stating that the attached complaint "has or may be filed." While this language does not unequivocally confirm that the complaint had been filed in Tennessee, it is sufficient to put Johnson on notice of the filing. Watson testified that Johnson was present on the morning of October 2nd, so it stands to reason that Johnson received the complaint. Neither Kempler nor Washington were able to give any testimony directly supporting the proposition that Johnson had no notice of the Tennessee action. Conspicuously absent was any testimony from Johnson, either by affidavit or as a live witness, that disputed the notion that he had notice of the Tennessee action prior to filing the Mississippi complaint. The court finds that it is more than mere coincidence

2. The court need not determine whether Johnson did, indeed, actively evade service, as such a determination is not necessary to the ultimate outcome. The court has found that Johnson had

notice of the first filed Tennessee action prior to filing suit in Mississippi and that is sufficient to support the application of the first to file rule.

that Fat Possum filed suit one day after its Georgia attorney received the filed Tennessee complaint.

In the alternative, the plaintiff argues that even if the first to file rule would confer priority upon the Tennessee action, other factors give this court ample reason to disregard the rule. For one, the plaintiff asserts that the rule may be ignored if the first suit was filed merely as a preemptory filing to secure jurisdiction in another court. *See Martin v. South Carolina Bank,* 811 F.Supp. 679, 686 (M.D.Ga.1992). However, the plaintiff has failed to provide any persuasive evidence that the Tennessee action was merely a preemptive filing. Once Kempler faxed the September 29 letter to Capricorn warning that Fat Possum would attempt to enter an agreement with a third party, Capricorn had a legitimate reason to respond by filing suit in Tennessee seeking to enforce the alleged contract.

The plaintiff further argues that the financial condition of the parties should be given consideration. The plaintiff asserts that Fat Possum cannot afford to litigate in Nashville, Tennessee, but that litigating outside of its locality would not be a financial burden for Capricorn. It should be noted that the only case the plaintiff cites in support of this proposition states that the financial condition of the parties, while a relevant consideration, is "not entitled to great weight." *Houk v. Kimberly–Clark Corp.,* 613 F.Supp. 923, 929 (W.D.Mo.1985). The court is not convinced that Fat Possum's financial condition is a sufficiently compelling reason to disregard the first to file rule. The court is likewise not persuaded that other factors, such as the location of the evidence or the fact that Mississippi law governs the agreement, render Mississippi a more appropriate forum than Tennessee.

■ Having decided that this court should defer to the action previously filed in Tennessee, the only remaining issue is the appropriate means for implementing this decision. The defendant has asked this court to either dismiss this action entirely, stay this proceeding pending the outcome of the action in Tennessee, or transfer this cause to the Middle District of Tennessee pursuant to 28

U.S.C. § 1404(a). The court sees very little substantive difference in the three options. Fat Possum has indicated that it would prefer the case be transferred rather than dismissed or stayed, and the court will oblige. Capricorn has stated to the court that it is ready to proceed immediately in the federal court in Tennessee with the motion of Fat Possum for a preliminary injunction.

### CONCLUSION

For the aforementioned reasons, the court finds that this action should be transferred to the United States District Court for the Middle District of Tennessee pursuant to 28 U.S.C. § 1404(a).