Diane ADOMA, Plaintiff,

v.

The UNIVERSITY OF PHOENIX, INC., et al., Defendants.

No. CIV. S–10–0059 LKK/GGH.

United States District Court, E.D. California.

May 3, 2010.

**1144**

Megan Ross Hutchins, Michael Lion Tracy, Law Office of Michael Tracy, Irvine, CA, for Plaintiff.

Jason S. Mills, Morgan Lewis And Bockius LLP, Los Angeles, CA, for Defendants.

## ORDER

LAWRENCE K. KARLTON, Senior District Judge.

Plaintiff in this suit brings various claims for unpaid overtime wages against the University of Phoenix and Apollo Group, Inc., on behalf of herself and others similarly situated. Plaintiff's suit articulates four different theories of recovery: (1) a class action complaint brought under Federal Rule of Civil Procedure 23(a), (b)(1), and (b)(3) alleging various violations of the California Labor Code; (2) a collective action complaint under the Fair Labor Standards Act ("FLSA"); (3) an individual action for retaliation and record production; and (4) a Private Attorney General Act claim for violations of the California Labor Code.

Defendants argue that they face similar unpaid overtime suits in the Eastern District of Pennsylvania and Central District of California. During the hearing on this motion, however, defendants represented that the allegedly similar suit in the Central District of California has reached a settlement awaiting court approval. Defendants here move to dismiss the FLSA claim under the first-to-file rule, or in the alternative, to stay and/or transfer the claim to the Central District of California. Defendants also move to stay plaintiff's state law claims and to transfer this case to the Central District of California. For

the reasons stated below, defendant's motion is denied.

## I. BACKGROUND

The University of Phoenix ("UOP") is a private, for-profit educational institution that offers classes at 362 independent campuses throughout the United States, and through online programs. Plaintiff's Opposition Ex. A. ("Opp."). UOP is a wholly owned subsidiary of Apollo Group, Inc., ("Apollo") a publicly traded corporation. Defendants Disclosure Statement 2. UOP employs enrollment counselors in call centers nationwide, who receive calls related to enrollment in UOP's programs. Plaintiff's Complaint ¶ 15 ("Compl."); Opp. Ex. A.

### A. *Sabol* Action

On July 30, 2009, plaintiffs Erik M. Sabol ("Sabol") and Rebecca Odom ("Odom") filed a complaint against defendants UOP and Apollo in the U.S. District Court, Eastern District of Pennsylvania, on behalf of all academic and enrollment counselors employed by defendants. *Sabol v. The University of Phoenix,* No. CV 09–03439–JCJ (E.D.Pa.) ("*Sabol*"); Motion to Dismiss ("Mtd.") Ex. 1. They alleged that UOP's counselors, at the direction of the supervisors, routinely worked overtime hours without compensation. Mtd. 4. On November 4, 2009, the court in *Sabol* issued an order requiring the parties to complete discovery, concerning whether the named plaintiffs are similarity situated to each other and/or other individuals by February 1, 2010. *Id.* On January 25, 2010, defendants filed a Motion for Partial Summary Judgment as to some of plaintiff's claims. *Id.* On February 16, 2010, plaintiffs filed a Motion for Conditional Certification. *Id.* at 5. Plaintiffs in the *Sabol* case seek certification of a collective action consisting of (1) academic or enroll-

ment counselors employed by defendants who (2) were not paid for all the hours worked in a given workweek, (3) were not paid overtime, and (4) choose to opt-in to the FLSA action. *Id.* at 3. The certification motion is fully briefed in the Eastern District of Pennsylvania.

**B.  *Juric* Action**

On April 30, 2009, Plaintiff Dejan Juric ("Juric") filed a complaint against UOP and Apollo in the Superior Court for the State of California for the County of Los Angeles, which defendants removed to the Central District of California on May 7, 2009. *Juric v. The University of Phoenix, Inc.,* No. 90–CV–3214 ODW (C.D. Cal.) (*"Juric"*). The complaint contained state law class action claims under the California Labor Code, and Business & Professions Code, but did not include any FLSA claims. *Mtd.* at 4. On January 6, 2010, the court issued an order granting a stipulation for leave to amend. *Id.* Juric subsequently abandoned his state law class claims, and filed a first amended complaint ("FAC"). *Id.* Juric's FAC stated a claim under the FLSA wherein he sought unpaid overtime wages, among other relief. *Id.* The FAC sought collective action certification for a class composed of enrollment and admission counselors, employed by defendants within the past three years. *Id.* On February 16, 2010, defendants filed a motion to dismiss, or in the alternative, stay the *Juric* FLSA collective action claim. *Id.* at 6. At the hearing, defendants indicated that they have reached a tentative settlement in this case, and are now awaiting court approval of the settlement.

**C.  *Adoma* Action**

On January 8, 2010, plaintiff Diane Adoma ("Adoma" or "plaintiff") filed the instant action against UOP and Apollo. *Id.* Plaintiff alleges that UOP's enrollment counselors were required to under-report the number of hours they worked through a "dual book keeping system." Compl. ¶ 16; Opp. 1. *Sabol* and *Juric* do not proceed on a dual book keeping theory. They do, however, involve claims for uncompensated overtime, on behalf of a similar class of employees, brought against the same defendants. Plaintiff further alleges that defendants have an accurate method of recording the hours worked by their employees. Compl. ¶ 24. Specifically, defendants' phone system tracks the exact time enrollment counselors are at their desks taking calls. *Id.* at ¶ 22. The system also records when employees leave their desks, and when they are on break. Compl. ¶¶ 22, 23, 24. Plaintiff contends, however, that rather than recording payroll hours through the phone system, defendants used a highly inaccurate web-based system. *Id.* at ¶ 17.

Defendants' web-based system requires overtime hours to be affirmatively entered. *Id.* at ¶ 19. Plaintiff alleges that defendants had a policy of only entering overtime in increments of thirty minutes. *Id.* at ¶ 21. Plaintiff contends that the web-based system was often broken, and when working was so slow that it was difficult or impossible to use. *Id.* ¶¶ 18, 20. Accordingly, employees routinely did not enter hours they worked, and were not compensated for their overtime hours. *Id.*

Plaintiff Adoma's complaint proposes three different potential group actions. First, plaintiff seeks to bring a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(1), and (b) (3) for violations of state law. *Id.* at ¶ 11. In this class, plaintiff seeks to represent enrollment counselors who are currently employed or have been employed in California within the 4 years prior to filing, who: (1) worked more than 8 hours in a day or 40 hours in a week without being compensated at the proper premium rate, (2) worked more than five hours without a proper meal

break, (3) received a pay stub that did not accurately reflect all the information required by labor code s 226, or (4) were willfully not paid all wages upon leaving employment. *Id.*

Plaintiff further seeks collective action certification under FLSA as to the following collective class: all persons in California who worked as enrollment counselors during a period of three years prior to the commencement of the action.[1] *Id.* at ¶ 38. Finally, Plaintiff Adoma brings an individual claim under the Private Attorney General Act ("PAGA") for California Labor Code violations committed on "[a]ll [e]nrollment [c]ounselors or anyone, regardless of job title, who is primarily engaged in assisting prospective students with enrollment." *Id.* at ¶ 51.

## II. ANALYSIS

Plaintiff's complaint presents one federal claim under FLSA for over-time pay and liquidated damages. 29 U.S.C. §§ 207, 216. Plaintiff's remaining twelve causes of action arise under state law. Defendants do not address the merits of plaintiff's claims in their motion to dismiss, but rather argue for dismissal of the federal claim and for stay of the state law claims under the first-to-file rule. Defendants also move to transfer this case to the Central District of California.

### A. First–to–File Rule

■■■ The "first-to-file rule" is a doctrine of federal comity that permits a district court to decline jurisdiction over an action "when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Systems, Inc. v. Medtronic, Inc.,* 678 F.2d 93, 94–95 (9th Cir.1982). "The most basic aspect of the first-to-file rule is that it is

discretionary; 'an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.'" *Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622, 628 (9th Cir.1991) (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183–84, 72 S.Ct. 219, 96 L.Ed. 200 (1952)). Although discretionary, the rule "serves the purpose of promoting efficiency well and should not be disregarded lightly." *Church of Scientology of Ca. v. U.S. Dept. of Army,* 611 F.2d 738, 750 (9th Cir.1979). In applying the first-to-file rule, a court looks to three threshold factors: "(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." *Alltrade,* 946 F.2d at 625–26. If this action meets the requirements of the first-to-file rule, the court has the discretion to transfer, stay, or dismiss the action. *Id.* at 622. The district court retains the discretion, however, to disregard the first-to-file rule in the interests of equity. *Id.* at 622. Plaintiff's various claims present distinct factual and legal issues, which are addressed below.

### 1. Chronology of the Actions

The *Sabol* complaint was filed on July 30, 2009. Mtd. 3. Plaintiff filed the instant complaint on January 8, 2010. Mtd. 11. Plaintiff nonetheless disputes that the instant action is the second-filed case. Plaintiff contends that the *Sabol* action has not commenced for the purpose of the first-to-file rule in the absence of a signed and filed consent by the plaintiff, as required to commence a collective action.

■■ Collective actions under section 216(b) differ from class actions as defined by Rule 23 of the Federal Rules of Civil Procedure. A FLSA action under 216(b)

---

1. While plaintiff's complaint indicates that she seeks collective action certification of a nationwide group, Compl. ¶ 38, plaintiff stated at the hearing on this motion that her FLSA claim is limited to certification of California residents only.

is only a collective action if other plaintiffs affirmatively opt-in through written and filed consent. *Smith v. T–Mobile USA Inc.*, 570 F.3d 1119, 1121–22 (9th Cir.2009). A collective action under the FLSA is considered commenced in the case of any individual claimant

> on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or [ ] if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256(a)-(b). This provision, however, applies only to the statute of limitations. *See Drabkin v. Gibbs & Hill*, 74 F.Supp. 758, 762 (S.D.N.Y.1947) ("[T]he requirement for the filing of the 'written consent to become a party plaintiff' is for the specific purpose of determining the applicability of the statute of limitations." An FLSA action "commences" when the complaint is filed with the court); *see also* Fed.R.Civ.P. 3 ("A civil action is commenced by filing a complaint with the court"); *Pacesetter*, 678 F.2d at 96 n. 3 ("A federal action is commenced by the filing of the complaint, not by service of process ... It is thus the filing of actions in coordinate jurisdictions that invokes considerations of comity.") (citations omitted).

■ The *Sabol* action commenced when it was filed on July 30, 2009, over five months before the instant action, Mtd. 3. Thus, 8 the first requirement of the first-to-file rule is met.[2]

### 2. Similarity of the parties

■■ The similarity of parties requirement for the first-to-file rule is also met.

It has been held that the first-to-file rule does not require strict identity of the parties, but rather substantial similarity. *Inherent.com v. Martindale–Hubbell*, 420 F.Supp.2d 1093, 1097 (N.D.Cal.2006). In a collective action, the classes, and not the class representatives, are compared. *Ross v. U.S. Bank Nat. Ass'n*, 542 F.Supp.2d 1014, 1020 (N.D.Cal.2008) (citing Cal. Jur.3d Actions § 284).

District courts, however, disagree as to whether this comparison can occur before any collective action has been certified. For example, in *Lac Anh Le v. PricewaterhouseCoopers LLP*, No. C–07–5476 MMC, 2008 WL 618938, *1 (N.D.Cal.2008), a district court held that the parties in an earlier filed FLSA suit were not similar to parties in a later filed FLSA suit arising out of the same conduct because the district court in the earlier filed FLSA suit had not yet certified a collective action. As such, the court reasoned, the plaintiffs in the two actions were not similar because, at the time of the order, they were separate individuals. *Id.* Other district courts, however, have held that the first-to-file rule applies to similar proposed group actions before certification. For example, in *Weinstein v. Metlife, Inc.*, No. C 06–04444 SI, 2006 WL 3201045, *4 (N.D.Cal. Nov. 6, 2006), the court held that, "In a class action, however, it is the class, not the representative, that is compared." *Id.* (internal citation omitted); *see also Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F.Supp.2d 686, 689 (E.D.Tenn. 2005) (finding that parties substantially overlapped where "both actions seek certification of the same collective class, defining the class as all current or former Abercrombie employees who worked as managers-in-training or assistant managers and were not properly compensated

---

**2.** The court does not reach the question as to whether the *Juric* action was commenced primarily

or to the instant action because *Sabol* was clearly filed before both *Juric*.

for overtime work" even though the named plaintiffs were different individuals.). The court then stayed the matter pending resolution of a certification order in the first-filed cased. *Id.* This same district court later applied the same standard in *Ross v. U.S. Bank Nat. Ass'n,* 542 F.Supp.2d 1014, 1020 (N.D.Cal.2008), yet decided that the parties were not similar because in the earlier filed suit, the district court had denied a motion for certification. This court is persuaded that *Weinstein, Ross,* and *Fuller* adopt the appropriate standard for determining similarity where two cases are seeking collective action status, yet where a collective action order had not yet been issued by the first filed court.

■ Here, the named defendants in the *Sabol* and *Adoma* actions are identical. Moreover, the proposed classes for the collective actions are substantially similar in that both classes seek to represent at least some of the same individuals. If the collective action in *Sabol* is certified, plaintiff may be able to opt in. Accordingly, the second prerequisite of the first-to-file rule is satisfied.

### 3. Similarity of the issues

■ Ultimately, the applicability of the first-to-file rule to plaintiff's FLSA claim turns the similarity of the issues in *Adoma* and *Sabol.* Nonetheless, it has been held that for the first-to-file rule to apply, the issues in two actions need not be identical. *Inherent.com,* 420 F.Supp.2d at 1097. Rather, the issues need only be "substantially similar." *Id.* While the particular facts in *Inherent.com* might result in a different analysis by this court, the principle applied there appears, in general, sound.

Again, in *Jumapao v. Washington Mutual Bank,* No. 06–CV–2285, 2007 WL 4258636, *1 (S.D.Cal. Nov. 30, 2007), the first-filed complaint was brought on behalf of Washington Mutual Bank's current and former loan consultants. This class action complaint contained allegations of overtime compensation violations of the FLSA and state law claims, including violations of Cal. California Business & Professions Code § 17200, and various provisions of the California Labor Code. The *Jumapao* plaintiff subsequently filed an action, alleging among other things, violations of the California Business & Professions Code § 17200, various provisions of the California Labor Code, and the FLSA. *Id.* The court observed that "both cases arise from Washington Mutual's failure to pay overtime and minimum wages to loan consultants, as well as its failure to comply with California record-keeping requirements." *Id.* at *3. The similarity in allegations would require the court to make similar determinations, so that the court found that the issues were substantially similar enough for the first-to-file rule to apply. *Id.*

■ Here, both *Sabol* and *Adoma* advance FLSA off-the-clock claims for unpaid overtime. The ultimate issue to be determined in both actions is whether UOP enrollment counselors worked uncompensated overtime hours. Plaintiff *Adoma's* opposition brief, however, distinguishes her FLSA claim from *Sabol* with an additional unpaid overtime theory. Specifically, plaintiff argues that UOP offered free tuition to employees, which was not included in determining the employees' rates of pay. Opp. 9. The FLSA requires that, but for narrowly defined exclusions, all compensation be included in an employee's regular rate of pay. 29 C.F.R. § 778.200. Free tuition is not listed as an exclusion. *Id.* According to plaintiff, even if the major factual issue to be determined in *Sabol,* whether plaintiffs worked off the clock, is determined in defendants' favor, plaintiffs in *Adoma* would still be entitled to additional overtime compensation under

the FLSA for time worked on the clock.[3] Opp. 9. Defendants contend that this additional allegation is not a matter of distinguishing facts so much as a matter of a different remedy, or damages, sought. *See, generally, Pacesetter,* 678 F.2d at 95–6 (finding that the first-to-file rule applicable where "two actions differ only as to the remedy sought", but the underlying legal issues were the same). Defendants also argue that this theory of relief was not raised in plaintiff's complaint.

Plaintiff's additional FLSA theory does not necessarily prevent the application of the first-to-file rule. The central question in both *Sabol* and *Adoma* remains whether a class is entitled to compensation for unpaid, off-the-books overtime. *See, generally, Ward v. Follett Corp.,* 158 F.R.D. 645, 648–49 (N.D.Cal.1994) (applying the first-to-file rule where the central question in both actions was whether plaintiff was entitled to royalties). This court could not arrive at the central question of the alternate theory without addressing the common factual issues implicated in both cases. Thus, the issues are also similar between *Sabol* and *Adoma,* and accordingly, the first-to-file rule might well apply in this case.

### 4. Exception

Even assuming the three requirements of the first-to-file rule are satisfied here, it does not follow that application of the rule is appropriate. The doctrine is discretionary and, accordingly, the court may disregard it in the interests of equity. *Alltrade,* 946 F.2d at 622. "The circumstances under which an exception to the first-to-file rule typically will be made include bad faith, ... anticipatory suit, and forum shopping." *Id.* at 627–28; *see, generally,*

*Inherent.com,* 420 F.Supp.2d at 1099 ("because of the anticipatory nature of the [first suit] it would be inequitable to dismiss the current action under the first-to-file doctrine"). In applying the first to file rule, "courts are not bound by technicalities." *Church of Scientology of California v. U.S. Dept. of Army,* 611 F.2d 738, 750 (9th Cir.1979). The court's discretion is broad. In *Alltrade,* 946 F.2d at 628, the Ninth Circuit found that fairness considerations and equitable concerns could bar the application of the rule. In *Jumapao,* 2007 WL 4258636 at *3, the court noted that demonstrations of prejudice could bar its application as well.

Plaintiff Adoma offers several reasons for this court to exercise its discretion and decline to apply the first-to-file rule. First, plaintiff contends that application of the rule to her FLSA claim would prejudice the California litigants she seeks to represent. As discussed above, plaintiff Adoma offers an alternate theory of liability under FLSA for on-the clock free tuition, and a different theory of liability for unpaid overtime based on a dual-book keeping system. Opp. at 9. Plaintiff asserts that to dismiss or stay their claim would deprive them of the opportunity to litigate under these theories. *Id.*

Plaintiff also asserts that California plaintiffs would be prejudiced if they are required to wait for *Sabol* to be certified. *Id.* at 7. *Sabol* has been pending since July 30, 2009, without certification. *Id.* Plaintiff contends that California collective action members have lost nearly one year of their FLSA claim because of delays in *Sabol. Id.* According to plaintiff, the *Sabol* plaintiffs have been too overreaching in their claims, and have not conducted any Cali-

---

**3.** It is not clear if free tuition is available to UOP employees in Pennsylvania, or if the *Sabol* plaintiffs could have raised the issue. Plaintiff Adoma claims "it is very likely that free tuition is not available in Pennsylvania,

so that the *Sabol* plaintiffs cannot adequately represent all the legal issues." See Opp. 9. This contention is based on the fact that in *Sabol,* plaintiffs did not advance the claim.

fornia discovery, so that they are ill-positioned to represent the rights of California litigants. *Id.* Plaintiff asserts that the *Sabol* court may not certify a nationwide collective action, and if it does, it might be years before it could address the situation of California plaintiffs. *Id.* None of these California employees have tolled the applicable statute of limitations, and plaintiff argues that it would is unfair to force them to wait under these circumstances. *Id.* Plaintiff contends that they are prepared to go forward with certification. *Id.* at 8.

Further, unlike in a class action where the statute of limitations is tolled while a plaintiff seeks class certification, the rights members of a proposed collective action are not so protected. Under FLSA, a "cause of action … may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "[A] collective or class action instituted under the Fair Labor Standards Act of 1938 … shall be considered to be commenced in the case of any individual claimant—

  (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or

  (b) if such written consent was not so filed or if his name did not so appear-on the subsequent date on which such written consent is filed in the court in which the action was commenced.

*Id.* at § 256. Accordingly, the statute of limitations for members of plaintiff's proposed collective action runs until the class member opts in to the action. Here, plaintiffs have presented some evidence that the collective action proposed in *Sabol,* if certified, has a reasonable chance of being limited to Pennsylvania residents. As such, it seems possible that the rights of potential collective members in every other jurisdiction may be seriously infringed. Moreover, to the extent that delays in *Sabol* are the result of ineffective lawyering by plaintiffs' counsel, as plaintiff contends, class members nationwide may be harmed by not allowing Adoma's case to move forward to at least collective action certification. Lastly, to the extent that plaintiff brings claims not brought by plaintiffs in *Sabol,* the statute of limitations will continue to run on these theories of liability until conclusion of the *Sabol* litigation.[4]

■ The court is persuaded that the equities in this case tip in favor of an exception to the first-to-file rule. Specifically, the *Sabol* case has not advanced even to certification. Further, plaintiff brings additional theories of recovery. Moreover, the fact that plaintiff also seeks relief under California state law, which requires entirely different calculations for overtime compensation, demonstrates that judicial resources will not be significantly conserved. California courts will, if plaintiff is successful, notice a class action concerning overtime pay, and these class members will be required to participate in two separate claims for overtime compensation. Under the totality of the circumstances, the court finds that the first-to-file rule should not be applied in this case.[5]

---

**4.** Finally, I note that defendants' motion, if granted, works to deprive plaintiff of her own attorney. A matter not generally discussed in the cases.

**5.** Defendants also seek to apply the first-to-file rule to plaintiff's state law claims. Plaintiff brings twelve state law claims. These include state law class action claims, individual Private Attorney General Act claims, and individ-

## B. Transfer of Venue

Defendants move for transfer of venue from the Eastern District of California to the Central District of California under 28 U.S.C. § 1404(a), arguing that it is more convenient to litigate this case in the Central District of California.[6] Defendants have presented information indicating that about 60 percent of potential class and collective action members reside in the Central District as opposed to the approximately 40 percent residing in the Eastern District.

■■■ Transfer is within the discretionary power of the court. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). A court considers two prongs when ruling on a motion to transfer. (1) The district where the moving party seeks to transfer must be one where the case "might have been brought", and (2) transfer must serve the convenience of the parties and witnesses, and the interests of justice. *See* 28 U.S.C. § 1404(a).

■■■ A plaintiff's choice of forum is rarely disturbed, unless the balance is strongly in favor of the defendant. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). A party moving for transfer for the convenience of the witnesses must demonstrate, through affidavits or declarations containing admissible evidence, who the key witnesses will be and what their testimony will generally include. *E & J Gallo Winery v. F. & P. S.p.A.*, 899 F.Supp. 465, 466 (E.D.Cal. 1994).

■■ As a preliminary matter, the instant action could have been brought in the Central District. Indeed, the *Juric* action itself testifies to this fact. However, it is not clear that transfer would be more convenient to the parties and witnesses. The party moving for transfer must demonstrate, through affidavits or declarations containing admissible evidence, who the key witnesses will be and what their testimony will generally include. *E & J Gallo*, 899 F.Supp. at 466. Defendants have not specified which witnesses, if any, would be inconvenienced. Rather, defendants offer that the number of potential collective action and class action members in the Central District exceeds those in the Eastern District and, the court assumes, they and their supervisors would be potential witnesses. Dec. A. If it were the case that nearly all California potential collective action members were in the Central District, defendants' argument would carry some weight. Nonetheless, here, where approximately two fifths of the potential class members are in the Eastern District, the transfer of venue is not warranted. Accordingly, defendants have not met their burden, and their motion to transfer venue is denied.

## III. CONCLUSION

For the reasons stated above, defendants' motion, Dkt. No. 8, is DENIED.

IT IS SO ORDERED.

■■■

---

ual retaliation and record production claims. With the exception of the retaliation and record production claims, these state law causes of action are subject to the first-to-file rule for the same reasons as plaintiff's FLSA claim is. Nonetheless, the same exceptions apply and, thus, defendant's motion is likewise denied as to plaintiff's state law claims.

6. Defendants also move to transfer to the Central District of California under the first-to-file rule because *Juric*, the case that defendants are seeking court approval of a settlement, was filed prior to *Adoma*. At the hearing, defendants indicated that they are no longer moving to transfer on this ground because of the anticipated court-approved settlement.