**WOLF DESIGNS, INC., Plaintiff,**

v.

**DONALD MCEVOY LTD., INC. and Donald McEvoy, Defendants.**

Nos. Civ.A.3:03–CV–2837–G, Civ.A.3:04–CV–0348–G.

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 15, 2004.

Richard D. Anigian, Haynes & Boone, Dallas, TX, Donald M. Cislo, Kelly W. Cunningham, Mark D. Nielsen, Cislo & Thomas, Santa Monica, CA, for Plaintiff.

Linda R. Stahl, Andrews & Kurth, Dallas, TX, Bruce A. Fields, Steven H. Haney, Haney Buchanan & Patterson, Los Angeles, CA, for Defendants.

Hesha Abrams, Abrams Mediation & Negotiation Inc., Dallas, TX, pro se.

### MEMORANDUM ORDER

FISH, Chief Judge.

Before the court is the amended motion of the plaintiff Wolf Designs, Inc. ("Wolf Designs") to stay these consolidated cases until the conclusion of a related action pending in the United States District Court for the Central District of California. For the reasons discussed below, Wolf Designs' motion to stay is granted.

### I. BACKGROUND

These cases involve a patent dispute between Wolf Designs and Donald McEvoy Limited, Inc., *et al.* (collectively, "McEvoy"). Plaintiff Wolf Designs is a California corporation with its principal place of

business in Malibu, California. *See* Plaintiff's Original Complaint ("Complaint") ¶ 2. Defendant McEvoy is a Texas corporation with its principal place of business in Dallas, Texas. See *id.* ¶ 3. Both corporations are in the business of designing and selling jewelry boxes. See *id.* ¶¶ 10–16.

On July 2, 2003, Wolf Designs filed suit in the United States District Court for the Central District of California, Case No. CV–03–4729–SJO (the "California Action") alleging that Collectives, Inc. ("Collectives") had infringed its design patent for jewelry boxes. Plaintiff Wolf Designs' Brief in Support of Amended Motion to Stay Proceeding ("Wolf Designs' Brief") at 2; Defendant's Response to Plaintiff's Amended Motion to Stay ("McEvoy's Response Brief") at 2. The California Action was brought against the following persons: Collectives, a company which, like Wolf Designs, sells jewelry boxes; DHR & Company ("DHR"), a sales representative of Collectives; Stein Mart, Inc., a Florida based customer which purchased jewelry boxes from Collectives through DHR; David Richardson, a principal of DHR; and Shea Robinson and Michael Meyer, two sales representatives in Florida. Defendant Donald McEvoy's Opposition to Motion to Stay Proceedings ("Opposition to Motion to Stay Proceedings") at 3. Shortly thereafter, Wolf Designs filed a case in California against McEvoy, an established sales representative which has sold Collectives' products in the Dallas area. *Id.;* McEvoy's Response Brief at 2.

Eventually, Wolf Designs dismissed its claims against Robinson and Meyers in the California Action for lack for personal jurisdiction over those defendants. *See* Opposition to Motion to Stay Proceedings at 3. In addition, Wolf Designs dismissed the *McEvoy* action in California because McE-

voy only sold jewelry boxes in Texas and lacked minimum contacts with California. Plaintiff Wolf Designs' Reply Brief in Support of Amended Motion to Stay Proceedings ("Wolf Designs' Reply Brief") at 1; McEvoy's Response Brief at 2. On February 4, 2004, Wolf Designs filed a separate action against Collectives and DHR in California alleging patent infringement with respect to three particular jewelry boxes, which was later consolidated with the trade dress action for purposes of discovery and trial. *See* Wolf Designs' Brief at 2; McEvoy's Response Brief at 2. The trial in the California Action is set for November 2004. Wolf Designs' Brief at 2. Over 15 depositions have been taken in the California Action and numerous requests for documents and interrogatories have been filed. *Id.* Discovery in the California Action ended on August 23, 2004. *Id.*

On November 24, 2003, while the California Action was pending, Wolf Designs filed the first of these Texas suits against McEvoy alleging, *inter alia,* trade dress infringement and false advertising. McEvoy's Response Brief at 2; *see generally* Complaint ¶¶ 17–45. On February 19, 2004, Wolf Designs filed a second Texas suit against McEvoy for patent infringement. McEvoy's Response Brief at 3. These two cases were consolidated by order dated June 4, 2004 (collectively, the "Texas Action").[1] *Id.*

McEvoy attempted to conduct discovery in the Texas Action, serving interrogatories and requests for production on Wolf Designs on February 9, 2004. *Id.* Additionally, McEvoy noticed the deposition of Wolf Designs and its principal on this same date. *Id.* Although Wolf Designs sought extensions of time to respond to the discovery requests and plead the need to

---

1. Unlike the claims in the California Action, there are no claims against McEvoy in the Texas Action for either breach of contract or

misappropriation of trade secrets. *See* Complaint ¶¶ 17–45.

reschedule the depositions, it never contended that discovery should be delayed due to the California Action. *Id.* Barely a week before the scheduled deposition was set to take place, however, Wolf Designs filed its first motion to stay.[2] See *id.;* Plaintiff Wolf Designs' Motion to Stay the Proceedings ("Wolf Designs' First Motion to Stay").

McEvoy moved on June 3, 2004 to compel the depositions of Wolf Designs and its principal and on June 7, 2004 to compel further interrogatory responses and document production. McEvoy's Response Brief at 4. McEvoy's motion to compel the depositions was set for hearing before United States Magistrate Judge Paul Stickney by order dated June 9, 2004; however, Wolf Designs filed its amended motion to stay the next day.[3] *Id.; see also* Plaintiff's Wolf Designs' Amended Motion to Stay the Proceedings ("Amended Motion to Stay"). As a consequence of Wolf Designs' Texas Action against McEvoy, McEvoy has suspended sales of the allegedly infringing jewelry boxes. McEvoy's Response Brief at 4.

## II. *ANALYSIS*

### A. *The Legal Standard*

When related cases are pending in two federal courts, there is an inherent power in each of those courts, when presented with an appropriate motion, to stay the proceedings before it in deference to the related action. See *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Indeed, a stay pending the outcome of litigation in another court between the same parties, involving the same or controlling issues, is an appropriate means of avoiding unnecessary waste of judicial resources. *ACF Industries, Inc. v. Guinn,* 384 F.2d 15, 19 (5th Cir.1967) (citing *Landis,* 299 U.S. at 254, 57 S.Ct. 163), *cert. denied,* 390 U.S. 949, 88 S.Ct. 1039, 19 L.Ed.2d 1140 (1968). Such questions of docket management are left to the sound discretion of the district court, and it is the district court's responsibility to weigh the competing interests of the parties relating to the appropriateness of a stay. *Landis,* 299 U.S. at 255, 57 S.Ct. 163. The Fifth Circuit has specifically recognized that district courts have inherent power to stay or dismiss an action where the issues presented can be resolved in an earlier filed action pending in another federal district court. *West Gulf Maritime Association v. ILA Deep Sea Local 24,* 751 F.2d 721, 728–29 (5th Cir. 1985); see also *Sutter Corporation v. P & P Industries, Inc.,* 125 F.3d 914, 917 (5th Cir.1997). This is the so-called "first to

---

**2.** Wolf Designs' first motion to stay related solely to the November 2003 trade dress suit. McEvoy's Response Brief at 3. On May 28, 2004, Wolf Designs filed a separate motion to stay the patent case. *Id.* Prior to seeking a stay, Wolf Designs had agreed to dismiss this case without prejudice so that the California Action could go forward and the findings could be applied to the instant case to limit the need for trial if this case were re-filed. Wolf Designs' Brief at 3; *see also* Certificate of Conference, *attached* to Plaintiff's Amended

Motion to Stay the Proceeding ("Amended Motion to Stay"). McEvoy's counsel, however, refused to agree to a stipulated dismissal of this case without prejudice. Wolf Designs' Brief at 3.

**3.** The amended motion to stay appears to rely on exactly the same authority as the previously filed motion to stay, and is substantively identical to the May 28, 2004 motion. McEvoy's Response Brief at 4.

file rule." *Sutter Corporation,* 125 F.3d at 917. As stated by the Fifth Circuit:

> The federal courts have long recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs. "As between federal district courts, ... the general principle is to avoid the duplicative litigation." The concern manifestly is to avoid waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result. To avoid these ills, a district court may [stay] an action where the issues presented can be resolved in an earlier-filed action pending in another district court.

*West Gulf Maritime Association,* 751 F.2d at 728–29 (citations omitted).

This situation presents two functional inquiries: "(1) are the two pending actions so duplicative that one court should decide the subject matter of both actions; and if so, (2) which of the two courts should take the case?" *Superior Savings Association v. Bank of Dallas,* 705 F.Supp. 326, 328–29 (N.D.Tex.1989); *Columbia Plaza Corporation v. Security National Bank,* 525 F.2d 620, 628–29 (D.C.Cir.1975); *Mann Manufacturing, Inc. v. Hortex, Inc.,* 439 F.2d 403, 407–08 (5th Cir.1971).

### B. *Are the California Action and the Texas Action Duplicative?*

■ Concurrent actions pending in different federal courts are duplicative for the purpose of staying one action in favor of the other when the overall content of each suit is not very capable of independent development and will be likely "to overlap to a substantial degree." *Mann Manufacturing,* 439 F.2d at 407, 408 n. 6. The "crucial inquiry" is one of substantial overlap of the issues; however, the issues presented need not be identical. *Save Power Ltd. v. Syntek Finance Corp.,* 121 F.3d 947, 950 (5th Cir.1997); see also *West Gulf Maritime Association,* 751 F.2d at 729 (stating that the issues involved need only be "closely related"); *Pastorek v. Trail,* No. Civ. A. 97–3040, 1997 WL 722956, at *3 (E.D.La. Nov.14, 1997) (noting that the issues presented were "inextricably intertwined" when the facts, witnesses, and evidence were the same in both cases). Where duplication is demonstrated, the general rule is that the later-filed action defer to the prior-filed one. *Mann Manufacturing,* 439 F.2d at 407–08; *Nelson v. Grooms,* 307 F.2d 76, 78 (5th Cir.1962).

■ McEvoy objects to a stay of these proceedings on several grounds. *See generally* McEvoy's Response Brief at 8–11. The court is convinced, however, that a stay is justified in these circumstances. There can be no doubt that the Texas Action and the California Action are related; they both arise out of the sale of jewelry boxes that allegedly infringe a design patent. While the cases are far from identical, the court finds them duplicative enough to warrant a stay of the Texas Action.

McEvoy contends that a stay is inappropriate in this case because it is not a party to the California Action. *Id.* at 10. Although the defendants in the Texas Action and the California Action are technically different, McEvoy's conduct is largely derivative of Collectives' conduct, which is at issue in the California Action. McEvoy is a sales representative of Collectives and sells the Collectives' jewelry boxes that are alleged to infringe. *Id.* at 2. In fact, the three jewelry boxes that McEvoy sells are a subset of the twenty boxes that are at issue in the California Action. See *id.* Furthermore, the presence of identical defendants in two concurrent federal actions is not a requirement to demonstrate dupli-

cation of the facts and issues. See *Save Power*, 121 F.3d at 950.

 McEvoy also argues that the claims in the Texas Action will not be resolved in the California Action. McEvoy's Response Brief at 8. McEvoy attempts to distinguish the claims in the Texas Action from those in the California Action but fails to demonstrate how there are any real differences between the two cases. In the Texas Action, Wolf Designs has alleged five causes of action against McEvoy: (1) false designation of origin under 15 U.S.C. § 1125(a); (2) false advertising; (3) trade dress infringement; (4) unfair competition under Texas state law; and (5) patent infringement. *See* Complaint ¶¶ 17–45; Wolf Designs' Reply Brief at 4–7; McEvoy's Response Brief at 8. Wolf Designs claims that the look of its jewelry boxes is distinctive, and that McEvoy's sale of similar jewelry boxes infringes Wolf Designs' rights to certain design elements. McEvoy's Response Brief at 8. To prevail on its false designation of origin and trade dress infringement claim, Wolf Designs must prove that the design of its products has acquired secondary meaning. See *Wal–Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 215, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000). Secondary meaning is determined based on several factors: (1) the duration and exclusivity of the design's use; (2) the amount and nature of advertising that emphasizes the design and its distinctive, identifying features; (3) consumer survey evidence that links the design to a single source; and (4) the defendant's intent in copying the design. *Pebble Beach Company v. Tour 18 I, Ltd.*, 942 F.Supp. 1513, 1559 (S.D.Tex.1996) (citing *Duraco Products, Inc. v. Joy Plastic Enterprises, Ltd.*, 40 F.3d 1431, 1452 (3rd Cir.1994)), *aff'd as modified*, 155 F.3d 526 (5th Cir.1998). Contrary to McEvoy's assertions, none of these factors requires the plaintiff to establish secondary meaning of its product

within a limited geographic area. Compare *Pebble Beach*, 942 F.Supp. at 1559–60 (examining the impact of nationwide advertising in the secondary meaning analysis even though the defendant operated the two infringing golf courses in limited areas) with *Bank of Texas v. Commerce Southwest, Inc.*, 741 F.2d 785, 789 (5th Cir.1984) (discussing what is required to establish secondary meaning of a name where the bank only operated and advertised in specific parts of Dallas County); *see also* McEvoy's Response Brief at 9. Even though McEvoy does business only in Texas, Oklahoma, Louisiana, Arkansas, New Mexico, and Southern Mississippi (collectively, the "McEvoy Territory"), it is possible that Wolf Designs can still establish secondary meaning within the McEvoy Territory based on the depositions already taken in the California Action. According to Wolf Designs, it has obtained deposition testimony in the California Action from entities in several distinct regions of the United States demonstrating that Wolf Designs' jewelry box trade dress has achieved secondary meaning throughout the United States. Wolf Designs' Reply Brief at 5 n. 5. For these reasons, the trade dress claim in the Texas Action is not significantly different enough to warrant the denial of a stay in the Texas Action.

Additionally, the false advertising and unfair competition claims in the Texas Action are substantially related to the claims in the California Action. McEvoy, as the sales representative for Collectives, has been engaged in advertising Collectives' jewelry boxes in its territory, which Wolf Designs claims to be in violation of its patent and trademark rights. Thus, factual issues concerning McEvoy's advertisements, as well as Collectives' advertising practices, will apparently be raised and addressed in the California Action. Moreover, although the unfair competition claim

in the Texas Action will be analyzed under Texas law, California's unfair competition laws are substantially similar in approach to Texas's unfair competition laws. *See, e.g.,* CAL. BUS. & PROF.CODE § 17200 (broadly defining "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice"); *Rothschild v. Tyco International (US), Inc.,* 83 Cal.App.4th 488, 494, 99 Cal.Rptr.2d 721 (2000) (describing the coverage of the California law as "sweeping" and "embracing" anything that can properly be called a business practice and which is at the same time forbidden by law); *Taylor Publishing Co. v. Jostens, Inc.,* 216 F.3d 465, 486 (5th Cir.2000) (noting that in Texas the unfair competition law "is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters"). Due to the similarity in scope of the unfair competition laws in Texas and California, this court finds that the unfair competition claims in the Texas Action and the California Action are substantially related.

Further, the fact that the patent claims in the Texas Action and the California Action are identical counsels in favor of granting a stay. This court observed in *Whistler Group, Inc. v. PNI Corp.,* No. Civ. A. 3:03–CV–1536–G, 2003 WL 22939214 (N.D.Tex. Dec.5, 2003):

> Piecemeal litigation in the complex and technical area of patent and trademark law is especially undesirable. In such cases, the interest of justice may dictate [a stay] to prevent an extravagantly wasteful and useless duplication of the time and effort of the federal courts by the simultaneous trial of two complex and elaborate cases involving substantially the same factual issues. By permitting two different courts to interpret the same patent claims, there is a heightened risk of inconsistent rulings which, in turn, promotes uncertainty and impedes the administration of justice.

*Id.* at *5 (citations and internal quotation marks omitted). Similarly here, because there is pending in the Central District of California a soon-to-be-tried case involving the same patent at issue in the Texas Action, the infringement action could be more effectively managed in that venue and the risk of inconsistent results from multiple litigations can be avoided if the Texas Action is stayed.

Finally, the witnesses in the Texas Action and the California Action are virtually identical. Wolf Designs' Reply Brief at 6; *see* Reply Brief Appendix at 1–3, 8–10. Also, the discovery in both actions overlaps to such a degree that both parties have agreed to allow discovery in the California Action to be used in this case.[4] Wolf Designs' Reply Brief at 6; *see also* Stipulation, *attached* to Wolf Designs' Reply Brief Appendix at 14–16.

After reviewing the arguments of all parties, the court concludes that the California Action and the Texas Action both (1) involve the same claims for design patent infringement; (2) will involve virtually identical witnesses; and (3) will involve substantially related questions of fact, and correspondingly, overlapping discovery. Where such substantial similarities exist, the parties and witnesses, the public, and

---

4. Although McEvoy alleges that the agreement to allow discovery from the California Action to be used in the Texas Action is *only* beneficial to Wolf Designs, this claim does not appear to be entirely true. The fact that McEvoy is represented in this case by the same attorneys who represent Collectives in the California Action suggests that those attorneys can conduct discovery in the California Action with a view towards this case. *See* Wolf Designs' Brief at 3; Wolf Designs' Reply Brief at 1. As a result, any disadvantage to McEvoy would appear to be minimal.

the courts are entitled to be free from the waste of duplicative litigation.[5]

## C. *Which Court Should Hear the Case?*

If the cases are duplicative, the next question is where the dispute should be heard. In the Fifth Circuit, the general rule is that the court initially seized of the controversy should be the one to decide whether it will try the case. *Mann Manufacturing*, 439 F.2d at 407. In this case, the court first seized of this action was the district court in the Central District of California. Although transfer of this case to California for consolidation would be an attractive option, McEvoy has successfully contested jurisdiction in California. McEvoy's Response Brief at 2; Wolf Designs' Reply Brief at 1. Consequently, a stay is the proper remedy because the issues in this case and the California Action are substantially similar, the witnesses overlap in both cases, and the California Action— the first-filed action—is more nearly ready for trial than the Texas Action. *See* Wolf Designs' Reply Brief at 3.

## III. *CONCLUSION*

For the reasons discussed above, Wolf Designs' motion to stay is **GRANTED**. These cases are **STAYED** until judgment is entered in the California Action, *Wolf Designs, Inc. v. DHR & Co.*, Case No. CV–03–4729–SJO in the United States District Court for the Central District of California.

**SO ORDERED.**

---

**5.** This court recognizes the burden imposed on McEvoy by a stay of the Texas Action. However, McEvoy will not incur expenses related to this action during the stay and there is no evidence that discovery, testimony, or documents presently available in the California Action will not be available to McEvoy after the stay. Moreover, McEvoy's interests are represented in the California Action, as it is a sales representative for Collectives, one of the defendants there, and it is represented by the same California counsel representing Collectives in the California Action.